[No. 16986-3-III. Division Three. August 24, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES E. TAYLOR, *Appellant*.

*George M. Ahrend*, for appellant.

*John D. Knodell, Prosecuting Attorney*, and *Charles S. Richens, Deputy*, for respondent.

KATO, J. — Charles E. Taylor appeals his juvenile convictions for three counts of second degree assault. He contends there was insufficient evidence the BB gun he used during the assault was a deadly weapon. We affirm.

On January 13, 1996, 17-year-old Mr. Taylor confronted

four younger boys who he suspected had been trespassing on his family's property in rural Grant County.[1] He followed the boys into a hayfield and yelled at them to get down or he would shoot. He also yelled that he would not have any trouble shooting them. A neighbor heard someone shout, "You son of a bitch, I'm going to blow your fucking brains out."

Three of the boys stopped, and Mr. Taylor eventually ordered them to lie facedown in the snow for 20 to 30 minutes. During that time, he brandished a black BB pistol that resembled a .45-caliber Colt automatic pistol. Mr. Taylor pointed the BB pistol at each of the three boys, and held it about one-half inch from one boy's head. The boys testified they believed the pistol was a firearm and feared they were going to be shot.

The fourth boy escaped and ran home to tell his father what was happening. The father drove to the hayfield and eventually took the boys to his home and reported the incident to police.

Mr. Taylor was charged with three counts of second degree assault and three counts of unlawful imprisonment. The court found:

> 20. The BB pistol the respondent pointed at [the three boys] from close range, under the circumstances in which it was used or threatened to be used by the respondent, was readily capable of causing death or substantial bodily harm and it was therefore a deadly weapon. The BB pistol is in evidence as plaintiff's exhibit #2 and nothing appears to be wrong with it.

The court found Mr. Taylor guilty of all six charges. Mr. Taylor appeals only the second degree assault convictions, which were based on RCW 9A.36.021(1)(c). An element of the crime is the use of a deadly weapon. The term "deadly weapon"

---

[1]Mr. Taylor's family were caretakers of several horses that were kept in a corral near their home. In the months before the incident, trespassers had let horses out of the corral, and two horses had been killed by vehicles. The four boys testified they were having a snowball fight on vacant property nearby. In an unchallenged finding, the court found there was no credible evidence the boys entered the property where the livestock was located.

means any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm[.]

RCW 9A.04.110(6).

 This provision creates two categories of deadly weapons. The first includes explosives or firearms, which are deemed deadly per se regardless of whether they are loaded. *See State v. Carlson*, 65 Wn. App. 153, 158, 828 P.2d 30, *review denied*, 119 Wn.2d 1022 (1992). The second category includes any other weapon or instrument that may be deadly in fact if it is "readily capable of causing death or substantial bodily harm," depending on "the circumstances in which it is used, attempted to be used, or threatened to be used[.]" RCW 9A.04.110(6); *see Carlson*, 65 Wn. App. at 158-59.

A BB gun is not a firearm and thus is not a deadly weapon per se. *Carlson*, 65 Wn. App. at 161 n.10; *see State v. Majors*, 82 Wn. App. 843, 847, 919 P.2d 1258 (1996) (in most situations, a BB gun is not capable of causing death or serious injury), *review denied*, 130 Wn.2d 1024 (1997). Whether a BB gun is a deadly weapon in fact is a question for the trier of fact. *Carlson*, 65 Wn. App. at 160.

 Mr. Taylor contends there was insufficient evidence the BB pistol he used was a deadly weapon in fact. When a defendant challenges the sufficiency of the evidence, we must view the evidence in a light most favorable to the prosecution and must determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). We must draw all reasonable inferences in favor of the State and interpret them most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The elements of a crime may be established by either direct or circumstantial

evidence, and one type of evidence is no less valuable than the other. *State v. Thompson*, 88 Wn.2d 13, 16, 558 P.2d 202, *appeal dismissed*, 434 U.S. 898 (1977); *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986).

Mr. Taylor first points out there was no direct evidence the BB gun was functional. He relies on *Carlson*, in which the defendant pointed a gun, which appeared to be a rifle, at the victim and held the barrel several inches from his face. *Carlson*, 65 Wn. App. at 154-55. The victim pushed the gun away, after which the defendant held it as if he were preparing to strike the victim. *Id.* at 155. The gun was not placed in evidence, and the defendant testified it was an inoperative BB gun. *Id.* at 155, 161. The trial court did not find directly that the BB gun was a deadly weapon. *Id.* at 157. On appeal of his conviction for second degree assault, the defendant argued the BB gun was not a deadly weapon in fact because it was inoperative. The appellate court agreed, framing the issue as "whether the weapon 'as used' was 'readily capable of causing . . . substantial bodily harm.' " *Id.* at 159. Because the gun was not in evidence and the only testimony as to whether the gun was "readily capable" came from the defendant, the court concluded there was insufficient proof the weapon was deadly. *Id.* at 161-62.

*Carlson* is distinguishable. The gun Mr. Taylor used was introduced into evidence and the trial court expressly found that "nothing appears to be wrong with it." There was no question of fact whether the BB pistol was operational. *See Carlson*, 65 Wn. App. at 161 n.10 ("A BB gun may be deadly as a matter of law to the extent that there is no issue of fact that the gun was operative and used, or threatened to be used, in such a manner that it is 'readily capable of causing substantial bodily harm.' ").

Relying on dictum in *Carlson*, Mr. Taylor also points out there was no direct evidence the BB gun was loaded or

readily capable of being loaded.[2] In *Carlson*, 65 Wn. App. at 161, the court observed: "Even an *unloaded* BB gun, if used in such a circumstance that it could be readily loaded by the assailant, could be 'readily capable'." Mr. Taylor infers from this dictum that a BB gun that is unloaded and unable to be readily loaded cannot be a deadly weapon.

With the issue framed narrowly in *Carlson*, this dictum is logical. This is because the *Carlson* court apparently considered only whether the gun, *as used*, was capable of causing substantial bodily harm. *Id.* at 159. Obviously an unloaded gun is incapable of causing death or substantial bodily harm. But the statutory language requires the fact finder also to consider "the circumstances in which [the weapon] is . . . *threatened to be used*."[3] RCW 9A.04.110(6) (emphasis added). This additional language calls into question the *Carlson* court's conclusion that the weapon must be *actually* capable of producing substantial bodily harm. *Id.* at 160-61.

The clear language of the statute requires the fact finder to consider the circumstances in which the defendant *threatened* to use the weapon. Here, there was ample evidence that Mr. Taylor threatened to use the BB gun to shoot the three boys in a way that would have caused substantial bodily harm.

Moreover, even if the *Carlson* dictum is a correct interpretation of the statute, Mr. Taylor's repeated threats to shoot the boys with the BB gun created an inference that it was loaded. In his statement to the investigating officer after the incident, Mr. Taylor did not say the gun was unloaded; he merely denied pointing it at the boys or making any threats. Based on its findings and conclusions, the trial court obviously found this statement was not credible.

---

[2]The gun was unloaded and the barrel was breached open when Mr. Taylor turned it over to the investigating officer several hours after the incident.

[3]The court in *Carlson* may have declined to consider the remaining statutory language because in that case there apparently was no direct or overt threat, other than holding the barrel of the gun close to the victim's head.

The court's inference that the gun was loaded thus was reasonable.

The evidence was sufficient to establish the BB gun was a deadly weapon as defined by RCW 9A.04.110(6). The convictions are affirmed.

SCHULTHEIS, C.J., and BROWN, J., concur.