IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30198-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| URIEL ORTIZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Uriel Ortiz challenges his convictions for two counts of second degree assault and two counts of felony harassment on the basis of evidentiary sufficiency, evidentiary and instructional error, and prosecutorial misconduct. We find no error, and affirm.

FACTS

Late in the evening of May 21, 2011, Uriel Ortiz was at the store with his teenage son, Abraham Ortiz, when a friend informed him that Sarah Humphries had gone to Mr. Ortiz's residence to speak with Mr. Ortiz's wife, Patricia Rivera. Mr. Ortiz, who was

engaged in an extra marital affair with Ms. Humphries, became visibly upset and declared he was going to find and kill Ms. Humphries.

During this time, Ms. Humphries contacted Ms. Rivera at the family residence. Ms. Humphries expressed concern that Mr. Ortiz would return, so the women walked down the street. Mr. Ortiz, Abraham, and the friend returned to the family residence where they searched for Ms. Rivera. Abraham noticed Mr. Ortiz was wearing a holster with a handgun in it. The only weapon the family had in the house was a BB rifle.

Mr. Ortiz spotted the women down the street, contacted them, and threatened Ms. Humphries by pointing a gun toward her feet. Ms. Humphries stepped back and both women appeared scared. Ms. Rivera stepped in front of Ms. Humphries and attempted to push the gun away. Mr. Ortiz told Ms. Humphries she had better not come around and threatened to kill her.

After threatening Ms. Humphries, Mr. Ortiz returned to the family residence and told Abraham to go get Ms. Rivera. Ms. Rivera returned to the residence and Ms. Humphries left the area. According to Abraham, Mr. Ortiz told Ms. Rivera to avoid Ms. Humphries and knocked Ms. Rivera down when she tried to leave the room, telling her he was going to find and kill Ms. Humphries. According to Ms. Rivera, Mr. Ortiz pushed her down and proceeded to hit and kick her before pulling out the gun and telling her he would shoot her. He also told her that he was going to kill Ms. Humphries, and that he would kill Ms. Rivera if she left the family residence.

2

After Mr. Ortiz left, Ms. Rivera called the police. The police took Ms. Rivera and her children to the police station, and attempted to locate Mr. Ortiz. They eventually spoke with Mr. Ortiz on Abraham's cell phone and arranged to meet with him at the family residence approximately 45 minutes after the 911 call.

Mr. Ortiz immediately told the police the gun he used to threaten Ms. Humphries was a toy gun and directed the officers to a revolver-type BB gun lying on the ground outside the house. He was not wearing a holster. He also told the police he confronted the women with the BB gun and acted like he was going to slap Ms. Humphries with it. He denied hitting or threatening Ms. Rivera.

Mr. Ortiz was charged with two counts of second degree assault with a deadly weapon and two counts of felony harassment. Prior to trial, the State moved to admit evidence of two prior incidents of domestic violence committed by Mr. Ortiz against Ms. Rivera; one incident occurred in March 2011 and the other on May 20, 2011. Over objection, the trial court ruled the evidence was admissible under ER 404(b) to prove Ms. Rivera's reasonable fear and reasonable apprehension of bodily injury as well as to assist the jury in assessing Ms. Rivera's credibility. The defense did not request a limiting instruction.

Neither Ms. Humphries nor Mr. Ortiz testified at trial. After the State presented its case, Mr. Ortiz moved to dismiss all charges, arguing the State had failed to show he used a deadly weapon to threaten the women and that there was insufficient evidence to

3

prove he committed felony harassment of Ms. Humphries. The trial court denied the motion and the jury subsequently found Mr. Ortiz guilty on all four counts.

He timely appealed to this court.

## ANALYSIS

Mr. Ortiz alleges the trial court erred by admitting evidence of Mr. Ortiz's prior acts of domestic violence. He also claims the prosecutor committed misconduct, challenges the sufficiency of the evidence, and contends the trial court violated his right to a unanimous jury verdict. We address each argument in turn.[1]

*ER 404(b) Evidence*

Mr. Ortiz first argues the trial court erred by admitting evidence of his prior acts of domestic violence against Ms. Rivera under ER 404(b). He claims the prosecutor did not establish the purpose for which the evidence was admitted and also that the trial court failed to conduct the required ER 404(b) balancing test. We conclude that the prior acts of domestic violence were properly admitted under ER 404(b) to assist the jury in assessing Ms. Rivera's credibility and state of mind.

A defendant's prior acts of domestic abuse against the alleged victim are admissible under ER 404(b) to assist the jury in assessing the victim's credibility as a witness and the victim's state of mind. *State v. Grant*, 83 Wn. App. 98, 106-08, 920 P.2d

---

[1] Mr. Ortiz also raises a cumulative error argument, but because we conclude there were no errors, there is no basis for finding cumulative error.

4

609 (1996); *State v. Barragan*, 102 Wn. App. 754, 9 P.3d 942 (2000). A victim's knowledge of the defendant's past behavior is highly probative evidence that bears directly on the reasonableness of the victim's fear. *See, e.g., Barragan*, 102 Wn. App. at 759; *State v. Ragin*, 94 Wn. App. 407, 411, 972 P.2d 519 (1999); *State v. Binkin*, 79 Wn. App. 284, 291, 902 P.2d 673 (1995), *abrogated by State v. Kilgore*, 147 Wn.2d 288, 53 P.3d 974 (2002).

The decision to admit evidence under ER 404(b) is reviewed for an abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion if it fails to abide by the rule's requirements. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). Discretion is also abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The court held a pretrial hearing on July 26, 2011, to determine the admissibility of prior incidences of domestic violence committed by Mr. Ortiz against his wife. The first incident occurred in March 2011, and resulted in Ms. Rivera calling the police. The second occurred on May 20, 2011.

The trial court ruled that the evidence of Mr. Ortiz's prior assaultive conduct toward Ms. Rivera was admissible under ER 404(b) for two reasons. The court noted:

> So in general there are two separate legal theories that require the
> admissibility of prior threats and acts of domestic violence. One, to assess
> the domestic violence situation dynamics of the relationship to determine

whether the victim should be granted credibility. And the other
independent basis is that the defendant's charged with harassment and
the—part of that charge, one of the elements is the establishment of a real
threat and a reasonable apprehension of—that the harm—the threat will be
carried out.

Report of Proceedings July 26, 2011 at 25.

We agree that the evidence of Mr. Ortiz's prior assaultive conduct toward Ms.

Rivera was admissible under ER 404(b). To prove assault and harassment, the State had

to prove Ms. Rivera's state of mind: that she was placed in reasonable fear by the threat

to kill her, and she was placed in reasonable apprehension and fear of imminent bodily

injury when Mr. Ortiz pointed the gun at her. Mr. Ortiz's history of domestic violence

against Ms. Rivera was admissible to assess her state of mind. *Barragan*, 102 Wn. App.

at 759; *Ragin*, 94 Wn. App. at 411; *Binkin*, 79 Wn. App. at 291. Additionally, the

evidence was relevant in assessing Ms. Rivera's credibility as a witness. *Grant*, 83 Wn.

App. at 106-08. The prior acts of violence helped explain Ms. Rivera's inconsistent

action of returning to the residence after Mr. Ortiz's original threats. The prior acts were

admissible under ER 404(b).

Mr. Ortiz also claims the trial court erred in admitting the evidence because it did

not balance all the necessary factors before admitting the evidence under ER 404(b). In

order to admit evidence of other bad acts under ER 404(b), the proponent of the evidence

must first convince a trial court by a preponderance of the evidence that the "misconduct"

actually occurred. *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995). A trial

6

court may conduct a hearing to take testimony, but is not required to do so. *State v. Kilgore*, 147 Wn.2d at 294-95. If the court determines that the misconduct occurred, the court then must identify the purpose for which the evidence is offered, determine whether the evidence is relevant to prove an element of the offense, and weigh the probative value of the evidence against its prejudicial effect. *Lough*, 125 Wn.2d at 853. The failure to balance the probative value versus the prejudicial effect on the record may not be fatal if the trial court has established a sufficient record of the reasons for admitting the evidence. *State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

The trial court did not expressly state whether it found the prior acts of domestic violence actually occurred, but the record reflects the court's belief that the prior misconduct did occur as described by the State. The trial court identified the purpose for which the evidence was offered and determined it was relevant to prove the reasonable fear element of felony harassment and the reasonable apprehension element of second degree assault, as well as assist the jury in assessing Ms. Rivera's credibility. The trial court did not conduct the balancing on the record. However, the trial court established a sufficient record identifying the purpose for which it believed the evidence was relevant and admissible to allow review of its decision. *See Jackson*, 102 Wn.2d at 694.

Applying the four-part test to this case, the record shows the trial court had tenable reasons for admitting the prior acts of domestic violence. First, the State proved the occurrence of the acts by a preponderance of the evidence. The State admitted a police

7

incident report and Mr. Ortiz did not challenge the occurrence of the prior acts either at trial or on appeal. When performing an ER 404(b) analysis, a trial court may rely on an offer of proof by the lawyer offering the evidence. *Kilgore*, 147 Wn.2d at 294-95. After both parties have argued the matter and the court clearly agrees with one side, this court can excuse the trial court's lack of an explicit finding that the misconduct occurred. *State v. Stein*, 140 Wn. App. 43, 66, 165 P.3d 16 (2007).

The evidence was introduced for the purpose of showing that Mr. Ortiz had a history of committing violence against Ms. Rivera, and it was relevant to prove the reasonable apprehension element of the second degree assault charge as well as the reasonable fear element of the felony harassment charge. Although the trial court failed to weigh the prejudice on the record, this was harmless error because the record is sufficient for this court to determine that the trial court would still have admitted the evidence. *State v. Carleton*, 82 Wn. App. 680, 686-87, 919 P.2d 128 (1996). While the evidence certainly had a prejudicial effect by showing that Mr. Ortiz had a history of committing domestic abuse against Ms. Rivera, the evidence was highly probative because it demonstrated that Ms. Rivera's fear of substantial bodily harm or death was reasonable in light of her history with Mr. Ortiz, and it explained her inconsistent action of returning to the residence. Even though the trial court failed to articulate all four factors of the ER 404(b) test on the record, this was not reversible error. The evidence was properly admitted.

8

No. 30198-2-III
State v. Ortiz

*Prosecutorial Misconduct*

Mr. Ortiz next claims the prosecutor committed misconduct during closing argument by repeatedly urging the jury to consider his past acts of domestic violence for the improper purpose of arguing that he was the type of person who threatened women and he was not a credible witness. He also argues the prosecutor improperly emphasized the prior bad acts evidence to garner sympathy for Ms. Rivera and Ms. Humphries and appeal to the jury's passions. No prosecutorial misconduct occurred.

Counsel is allowed in closing argument to draw and express reasonable inferences from the evidence produced at trial. *State v. Hale*, 26 Wn. App. 211, 216, 611 P.2d 1370 (1980) (quoting *State v. Adams*, 76 Wn.2d 650, 660, 458 P.2d 558 (1969), *rev'd*, 403 U.S. 947, 91 S. Ct. 2273, 29 L. Ed 855 (1971)). On the other hand, "[m]ere appeals to jury passion and prejudice, as well as prejudicial allusions to matters outside the evidence, are inappropriate." *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). When improper argument is alleged, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect. *State v. Hoffman*, 116 Wn.2d 51, 93, 804 P.2d 577 (1991).

In determining whether prosecutorial comments have denied the defendant a fair trial, a reviewing court must decide whether the comments are improper and, if so, whether there is a substantial likelihood that the comments affected the verdict. *State v. Reed*, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). "Allegedly improper arguments should

9

be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given." *State v. Graham*, 59 Wn. App. 418, 428, 798 P.2d 314 (1990). A failure to object to an improper remark constitutes a waiver unless the comment is flagrant and ill intentioned and the resulting prejudice so enduring that jury admonitions could not neutralize its effect. *State v. Charlton*, 90 Wn.2d 657, 661, 585 P.2d 142 (1978). Since Mr. Ortiz failed to object to any of the challenged statements, he may only prove misconduct if he shows the challenged statements were so flagrant they could not have been cured by an instruction.

As discussed previously, evidence of prior domestic abuse is admissible to assess the victim's reasonable fear of the defendant and the victim's credibility. *Grant*, 83 Wn. App. at 105. Here, the prosecutor referred to the prior incidents to explain that Ms. Rivera was placed in reasonable fear and apprehension that Mr. Ortiz was going to kill her, and to rebut Mr. Ortiz's argument that the women would not have taken his threats seriously was not credible in light of his history. This was an argument the prosecutor could properly make based on the evidence presented at trial.

Mr. Ortiz also takes issue with the prosecutor's comment that Ms. Rivera and Ms. Humphries "didn't deserve" the things Mr. Ortiz was accused of doing, arguing that this improper comment attempted to obtain a conviction based on the passions of the jury. He does not cite to any case law to support his argument that this was an improper comment. Furthermore, he has failed to demonstrate that any of the challenged comments were so

10

flagrant and ill-intentioned that they demonstrate an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

*Sufficiency of the Evidence*

Mr. Ortiz also challenges the sufficiency of the evidence to support both second degree assault convictions and the harassment conviction relating to Ms. Humphries. The evidence supported the convictions.

Evidence is sufficient to support a verdict if the trier of fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221.

Mr. Ortiz contends that the BB gun did not constitute a deadly weapon and therefore all the elements of second degree assault were not proved beyond a reasonable doubt. However, the State did not rely on the BB gun to prove a deadly weapon existed.

Second degree assault was charged on the theory that Mr. Ortiz intentionally assaulted both women with a deadly weapon. RCW 9A.36.021(1)(c). At trial, the State introduced the BB gun police recovered from Mr. Ortiz. Abraham testified that the gun he saw Mr. Ortiz carrying in a holster was not the family's BB rifle, and Ms. Rivera testified that the revolver-type BB gun the police recovered was not the same gun Mr. Ortiz used to threaten the women. Ms. Rivera also testified that to her knowledge the

11

only weapon the family had kept in the house was a BB rifle, but she had seen bullets for a handgun in a kitchen drawer. According to Ms. Rivera, Mr. Ortiz pointed the gun in the direction of Ms. Humphries' feet. When the defense moved to dismiss the second degree assault charges, the trial court denied the motion on the basis that while the BB gun was not a deadly weapon, there was ample evidence that a real firearm was used to threaten the women.

RCW 9A.04.110(6) defines a "deadly weapon" as:

[A]ny explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

The statute creates two categories of deadly weapons: firearms and explosives which are deadly weapons per se, and any other weapon or instrument that is readily capable of causing substantial bodily harm depending on the circumstances in which it is used, or threatened to be used. *State v. Carlson*, 65 Wn. App. 153, 158-59, 828 P.2d 30 (1992). The circumstances of a weapon's use may include the intent and present ability of the use, the degree of force, the part of the body to which it is applied, and the physical injuries inflicted. *State v. Winings*, 126 Wn. App. 75, 87, 107 P.3d 141 (2005). Whether a BB gun is a deadly weapon is normally a question for the trier of fact. *State v. Taylor*, 97 Wn. App. 123, 126, 982 P.2d 687 (1999).

12

Here, the State presented testimony from both Abraham and Ms. Rivera asserting that the gun Mr. Ortiz used to threaten the women was not the BB gun the police recovered. Mr. Ortiz had time to dispose of a firearm between the time that he left the house and he agreed to meet with police. Circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). The evidence allowed the jury to conclude that Mr. Ortiz used a real firearm. The evidence thus was sufficient.

Mr. Ortiz also challenges the sufficiency of the evidence supporting the conviction for felony harassment of Ms. Humphries, arguing there was no evidence of her subjective state of mind. This argument incorrectly assumes that the State cannot rely on circumstantial evidence to prove a victim's state of mind.

As charged here, felony harassment required proof that the offender, without lawful authority, threatened to kill another and by his words or conduct placed the person threatened in reasonable fear that the threat would be carried out. RCW 9A.46.020(1)(a)(i), (2)(b)(ii). The harassment statute is construed in light of the First Amendment to only reach true threats. *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004). A true threat is "a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . .as a serious expression of intention to inflict bodily harm upon or to take the life of [another

individual]." *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (internal

quotation marks omitted) (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797

(1998)). The test is an objective one, based on the speaker. *State v. Stephenson*, 89 Wn.

App. 794, 801, 950 P.2d 38 (1998). The speaker of a true threat does not have to actually

intend to carry out the threat—it is enough that a reasonable speaker would foresee that

the threat would be considered serious. *Kilburn*, 151 Wn.2d at 46.

Thus, the State not only had to show that Mr. Ortiz made a threat to kill Ms.

Humphries, but it also had to prove beyond a reasonable doubt that the threat placed Ms.

Humphries in reasonable fear of it being carried out. Ms. Humphries did not give a

statement to the police and she did not testify at trial. However, both Abraham and Ms.

Rivera testified that Ms. Humphries appeared scared when Mr. Ortiz pointed the gun at

her feet and she tried to back away from him.[2] Ms. Rivera also testified that Ms.

Humphries appeared scared of Mr. Ortiz when she first appeared at the residence and

requested to talk to Ms. Rivera somewhere away from the house because she was afraid

Mr. Ortiz would show up while they were talking. She also left the area once Mr. Ortiz

went inside the residence.

Circumstantial evidence is as reliable as direct evidence, and the State may prove

its case with only circumstantial evidence. *See, e.g.*, *Goodman*, 150 Wn.2d at 781; *State*

---

[2] As the trial judge noted, most if not all reasonable persons would be placed in reasonable fear if a person threatened to kill them while pointing a gun in their direction.

14

*v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). As the trial court noted, there is no rule that the victim's reasonable fear that the threat to kill will be carried out cannot be proved by circumstantial evidence alone. Normally the victim testifies because that is the simplest way to prove the victim was placed in reasonable fear. This case presents a unique situation in that the State did not present any testimony from Ms. Humphries.

However, the previously noted evidence established her state of mind. The evidence of Ms. Humphries's evident fear and the circumstances surrounding the threat allowed the jury to conclude that a reasonable person in her position would likely be placed in reasonable fear. The evidence of felony harassment was sufficient.

*Right to Unanimous Jury Verdict*

Mr. Ortiz's final argument is that the court erred by not giving a unanimity instruction because the State presented evidence of three different acts that could have constituted the second degree assault against Ms. Rivera. A unanimity instruction was not necessary here because one of the three acts occurred on a different day and the remaining two acts were part of a continuing course of conduct.

The question of jury unanimity is an issue of constitutional magnitude that can be raised initially on appeal. CONST. art. I, § 21; RAP 2.5(a)(3); *State v. Fiallo-Lopez*, 78 Wn. App. 717, 725, 899 P.2d 1294 (1995). This assignment of error is reviewed de novo. *State v. Bradshaw*, 152 Wn.2d 528, 531, 98 P.3d 1190 (2004).

15

Only a unanimous jury can return a "guilty" verdict in a criminal case. *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990). Where the evidence shows multiple acts occurred that could constitute the charged offense, the State must either elect which act it relies upon or the jury must be instructed that it must unanimously agree upon which act it found. *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Constitutional error occurs if there is no election and no unanimity instruction is given. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009); *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). This type of error requires a new trial unless shown to be harmless beyond a reasonable doubt. *Camarillo*, 115 Wn.2d at 64.

No election or unanimity instruction is needed if the defendant's acts were part of a continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). Appellate courts must "review the facts in a commonsense manner to decide whether criminal conduct constitutes one continuing act." *Fiallo-Lopez*, 78 Wn. App. at 724. A continuing course of conduct exists when actions promote one objective and occur at the same time and place. *Petrich*, 101 Wn.2d at 571; *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). A continuing course of conduct also exists when the charged criminal behavior is an "ongoing enterprise." *State v. Gooden*, 51 Wn. App. 615, 620, 754 P.2d 1000 (1988) (promoting prostitution was ongoing enterprise).

The charging document alleged that on May 22, 2011, Mr. Ortiz intentionally assaulted Ms. Rivera with a deadly weapon. The State presented evidence that when Mr.

16

Ortiz pointed the gun at Ms. Humphries's feet and threatened to kill her, Ms. Rivera stepped between them and attempted to push the gun away. The State also presented evidence that after Mr. Ortiz and Ms. Rivera returned to their residence, Mr. Ortiz pushed Ms. Rivera to the ground, pointed the gun at her, and threatened to kill her. Additionally, the State presented evidence of an assault against Ms. Rivera on May 20.

The jury could not have considered the earlier incident because it occurred prior to the charging date, and there was no evidence that Mr. Ortiz assaulted Ms. Rivera with a deadly weapon during that incident. As to the two remaining acts involving the gun on May 22, no unanimity instruction was necessary because those two acts were part of a continuing course of conduct.

In determining whether multiple acts were part of a continuing course of conduct, the reviewing court considers (1) the time separating the acts, and (2) whether the acts involved the same parties, location, and ultimate purpose. *State v. Brown*, 159 Wn. App. 1, 14, 248 P.3d 518 (2010). Here, the two acts were only separated by a short period of time and they occurred in the same general location. Mr. Ortiz initially threatened both women with the gun because he was angry that they had been talking and that his wife was made aware of his extra marital affair with Ms. Humphries. After Ms. Humphries escaped the situation and Ms. Rivera returned to the residence, he continued to make threats against both women while pointing the gun at Ms. Rivera. Both acts were motivated by the fact that Mr. Ortiz did not want the women to have any contact with

17

each other. Since the two acts of assault against Ms. Rivera were part of a continuing course of conduct, it was unnecessary for the trial court to give a *Petrich* instruction.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, J.