**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>KEITH ALAN WHITEHAWK,<br><br>               Appellant. | No. 86416-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — In 2002, Keith Whitehawk[1] pleaded guilty to second degree assault with a deadly weapon—a pellet gun. In this direct appeal, Whitehawk argues his guilty plea was involuntary in violation of due process. Whitehawk also asserts remand is necessary to strike the victim penalty assessment (VPA) because he is indigent. We remand to strike the VPA but otherwise affirm.

I

In 2002, the State charged 18-year-old Whitehawk with second degree assault. The information alleged that Whitehawk assaulted Daniel Smith and Joshua Turner

---

[1] Formerly, Keith Alan Puett. Whitehawk legally changed his name in 2024. See Mot. to Change Case Caption to Reflect New Name, In re Pers. Restraint of Whitehawk, No. 84616-7-I (Wash. Ct. App. Dec. 19, 2024).

"with a deadly weapon, to wit: a pellet gun." The affidavit of probable cause provided that on February 26, 2002, Smith was standing outside of a Denny's Restaurant where he was approached by Whitehawk. Smith explained that Whitehawk "pulled out a gun, cocked the trigger and pointed it at him." Smith described the gun as a chrome .45 caliber. The affidavit also provided that on February 27, 2002, Whitehawk approached Turner while near the Topper Motel. Turner stated that Whitehawk pulled a silver gun out and asked him if he had any money. When Turner said no, Whitehawk put the gun to Turner's temple and said "I knew it. If you did, I would have shot you." Whitehawk then ran off.

Whitehawk pleaded guilty to one count of second degree assault.[2] Whitehawk was sentenced to six months confinement.

In March 2024, Whitehawk appealed his 2002 judgment and successfully moved under RAP 18.8(b) to enlarge the time to file this appeal which would otherwise be untimely.

II

Whitehawk argues his plea was involuntary because there was a lack of a factual basis which prevented an understanding of the conduct constituting the offense. Whitehawk asserts that nothing in the charging document, affidavit of probable cause, or plea colloquy states that the pellet gun was readily capable of firing and thus, there was no factual basis for the plea.

---

[2] The crime was Whitehawk's "first strike" under the Persistent Offender Accountability Act (POAA), RCW 9.94A.570. After committing a second and a third serious offense, Whitehawk was sentenced to life without parole. In re Pers. Restraint of Whitehawk, No. 84616-7-I, slip op. at 2-3 (Wash. Ct. App. Mar. 10, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/846167.pdf.

In contrast, the State argues Whitehawk's plea is presumed valid because the charging documents included the essential elements of the crime. The State asserts the presumption is not overcome by the fact Whitehawk may not have understood the facts in relation to whether a pellet gun is a deadly weapon under the law at the time. We agree with the State.

"Alleged involuntariness of a guilty plea is the type of constitutional error that a defendant can raise for the first time on appeal." State v. Knotek, 136 Wn. App. 412, 422-23, 149 P.3d 676 (2006) (citing State v. Walsh, 143 Wn.2d 1, 6, 17 P.3d 591 (2001)). We review "the constitutional adequacy of a defendant's plea de novo." State v. Snider, 199 Wn.2d 435, 444, 508 P.3d 1014 (2022).

"'Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily.'" State v. Buckman, 190 Wn.2d 51, 59, 409 P.3d 193 (2018) (quoting State v. A.N.J., 168 Wn.2d 91, 117, 225 P.3d 956 (2010)). Whether the defendant establishes the factual basis for the offense in his guilty plea statement provides an indication of whether the plea was voluntary.[3] McCarthy v. United States, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969) ("[a guilty plea] cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts"); see also In re Pers. Restraint of Hews, 108 Wn.2d 579, 590, 741 P.2d 983 (1987) ("'The

---

[3] Distinct from the constitutional requirements, CrR 4.2(d) provides that a trial court shall not accept a guilty plea unless it determines there is a factual basis for the plea. The lack of a factual basis under the rule is not an issue of constitutional magnitude and it may not be raised for the first time on appeal. State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996); see also State v. Zumwalt, 79 Wn. App. 124, 129, 901 P.2d 319 (1995) (challenge to factual basis of plea appealable only because raised in the trial court). Accordingly, we address Whitehawk's challenge to the factual basis only in the constitutional context.

Constitution does not require the establishment in all cases of a factual basis for a guilty plea, but it does require that a plea be voluntary. Failure to establish a factual basis is likely to affect voluntariness.'" (citations omitted) (quoting United States v. Johnson, 612 F.2d 305, 309 (7th Cir. 1980))).

"'Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances.'" Snider, 199 Wn.2d at 444 (quoting State v. Branch, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996)). When the charging document accurately describes the elements of the offense charged, the defendant's plea is presumed to be knowing, voluntary, and intelligent. Snider, 199 Wn.2d at 445. A defendant may overcome this presumption with a showing they were affirmatively misled. Snider, 199 Wn.2d at 449.

The crime charged in Snider, failure to register as a sex offender, included a knowledge element. Snider argued he was misled because the State failed to detail the various facts it would need to prove to show knowledge. Snider, 199 Wn.2d at 445. The court explained, "Snider correctly points out that the term 'knowingly' often requires the State to show knowledge of multiple distinct facts, he fails to acknowledge that those distinct facts are not separate knowledge elements." Snider, 199 Wn.2d at 447. The court held Snider's plea was valid because the trial court accurately informed Snider of the knowledge element during colloquy, the information correctly described the element, and Snider hand-wrote the addition of "knowingly" to his typed statement of guilt. Snider, 199 Wn.2d at 449-50.

Whitehawk was charged with second degree assault with a deadly weapon. "A person is guilty of assault in the second degree if he or she, under circumstances not

amounting to assault in the first degree[,] . . . [a]ssaults another with a deadly weapon."

RCW 9A.36.021(1)(c).[4]  The statute defines "deadly weapon" as

> any explosive or loaded or unloaded firearm, and shall include any other weapon, device, instrument, article, or substance, including a "vehicle" as defined in this section, which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm.

RCW 9A.04.110(6).[5]

The information correctly described the elements and identified the pellet gun as a deadly weapon:

> SECOND DEGREE ASSAULT, committed as follows: That the defendant, on or about the 26th to the 27th day of February, 2002, did intentionally assault another person, to wit: Daniel Smith and Joshua Turner, with a deadly weapon, to wit: a pellet gun.

Accordingly, we presume the plea is voluntary and Whitehawk bears the burden to rebut the presumption.  He fails to do so.

The totality of circumstances show that Whitehawk's plea was constitutionally valid.  The information described the deadly weapon element.  The statement on guilty plea also included the elements and referenced the pellet gun as the deadly weapon.  Whitehawk acknowledged and agreed that he pleaded guilty to the crime as charged in the information and that he made the plea voluntarily.  Additionally, Whitehawk wrote that "[o]n or about Feb. 27, 2002 in Snohomish County, Washington, I intentionally assaulted Daniel Smith and Joshua Turner with a pellet gun."  As in Snider, the element at issue was included in the information and in the statement on guilty plea.

---

[4] This is the same language the statute used in 2002.  See former RCW 9A.36.021(1)(c) (2001).
[5] This definition has not changed since Whitehawk's 2002 plea.  See former RCW 9A.04.110(6) (1988).

Whitehawk was represented by counsel and during the plea colloquy, counsel stated that he had gone over the plea documents with Whitehawk. The trial court confirmed Whitehawk reviewed the plea documents and that he was pleading guilty to second degree assault. While the deadly weapon element was not mentioned in colloquy, Whitehawk fails to show that he was affirmatively misled when he pleaded guilty.[6] Ultimately, Whitehawk fails to overcome the presumption that his plea was voluntary.

Even if we look beyond the presumption, the facts were sufficient to support the plea under the law in 2002. In State v. Taylor, 97 Wn. App. 123, 125, 982 P.2d 687 (1999), Taylor used a black BB gun which resembled a .45 caliber pistol to assault three boys. Taylor pointed the BB gun about one-half inch from one boy's head. Taylor, 97 Wn. App. at 125. Taylor argued that the BB gun was not a deadly weapon because there was no evidence it was loaded or readily capable of being loaded. Taylor, 97 Wn. App. at 127-28. Division Three of this court disagreed and held that because the record showed Taylor threatened to use the BB gun in a way that could have caused bodily harm, the threats created an inference the BB gun was loaded. Taylor, 97 Wn. App. at 128-29. Here, nothing in the record suggests the pellet gun was unloaded or inoperable. Instead, the record shows Whitehawk used the pellet gun to threaten Smith and Turner. Under Taylor, such use creates an inference the pellet gun was operable and loaded or readily capable of being loaded.

---

[6] In Personal Restraint of Whitehawk, this court concluded that Whitehawk's counsel was not deficient in relation to his 2002 plea. Slip op. at 11-14.

For these reasons, Whitehawk's plea was voluntary and there was no violation of due process.

III

Whitehawk argues remand is necessary to strike the VPA because he is indigent. The State does not object.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, § 1.  Our courts have held that recent amendments to statutes governing legal financial obligations apply to matters pending on direct appeal.  State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).

Here, it is undisputed that Whitehawk is indigent and his direct appeal is pending. Accordingly, we accept the State's concession and remand to strike the VPA.

We remand to strike the VPA.[7]  We otherwise affirm.

_____
Mann, J.

WE CONCUR:

_____
Colburn, J.

_____
, ACJ

---

[7] Following this court's decision in Personal Restraint of Whitehawk, Whitehawk moved to estop the State from arguing the law of the case doctrine.  The motion is denied.