[No. 25619-3-II. Division Two. June 15, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. YURI MARLIN HOLMES, *Appellant*.

---

*Yuri Marlin Holmes*, pro se.

*Mary K. Young High*, for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

SEINFELD, J. — A jury found Yuri Marlin Holmes guilty of first degree robbery under the statutory alternative of being armed with a deadly weapon. But the jury rejected, by special verdict, the sentencing enhancement for being armed with a deadly weapon at the time of the commission of the crime. Holmes argues that these verdicts are irreconcilably inconsistent and therefore mandate reversal. In the alternative, he contends that the evidence was insufficient to support his robbery conviction. Pro se, Holmes raises several additional issues. Finding sufficient evidence to support the guilty verdict, no irreconcilable inconsistency in the verdicts, and no other error, we affirm.

## FACTS

After a Parkland Marketplace employee noticed two suspicious appearing people in the meat department in the middle of the night, another employee triggered the emergency signal to call the four store employees to the front of the store. Shortly thereafter, the employee saw one of them, a woman, exit the store and the employee then observed a light colored vehicle with a dark top leave the parking lot to the south.

Holmes, the other suspicious appearing person, then approached the front of the store with a hand-held grocery basket full of meat. When he began swearing, the store's assistant night manager told him he would have to leave if

he did not behave. Holmes bent down, set the grocery basket on the floor, fumbled around in the area of his pant leg and stood back up holding a yellow-handled utility knife, with the blade extended. Holding the knife at waist level, Holmes told the manager to "come get me" or to "try and stop me," and he waved the knife at the manager before turning and leaving the store with the basket of meat. 2 Report of Proceedings (RP) at 68, 109. The manager saw Holmes disappear around the unlit south side of the building, where he heard a car door shut.

About 10 minutes later, dispatch notified two patrolling officers about the robbery and gave them a description of the vehicle and the suspect. Dispatch described the vehicle as a yellow, full-sized car with a dark top and described the suspect as wearing a red sweatshirt and dark pants. The officers spotted a vehicle matching the description, stopped the car, and arrested the vehicle's driver, Holmes. The police found a yellow-handled utility knife on the driver's seat and various meat items in the trunk. Holmes admitted that he had taken the food to feed his wife but denied waving the knife at anyone. He said the knife had fallen out of his pants and he had merely bent down to retrieve it.

The State charged Holmes with first degree robbery and the jury convicted him as charged. But the jury rejected the deadly weapon sentencing enhancement.

## ANALYSIS

### INCONSISTENT VERDICTS

Holmes contends that the jury's verdicts—guilty of first degree robbery and acquittal of the deadly weapon enhancement—are irreconcilably inconsistent.

A person commits first degree robbery if, in the commission of a robbery[1] or in immediate flight therefrom, (1) he is

---

[1] Robbery is defined, in part, as the unlawful taking of

personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to

armed with a deadly weapon, (2) he displays what appears to be a firearm or other deadly weapon, or (3) he inflicts bodily injury. RCW 9A.56.200(1). The State charged Holmes with robbery under the alternative of being armed with a deadly weapon, the utility knife, and the elements instruction was consistent with the information. The court gave the jury two definitions of deadly weapon, one for the robbery charge and another for the special verdict.

■ ■ Generally, a special finding will not control a general verdict unless the two are irreconcilably inconsistent. *State v. Baruso*, 72 Wn. App. 603, 616, 865 P.2d 512 (1993). Thus, "where a special verdict is susceptible of two constructions, one of which will support the general verdict and the other of which will not, we will give such construction as will support the general verdict." *State v. Robinson*, 84 Wn.2d 42, 45, 523 P.2d 1192 (1974).

■ But even irreconcilable verdicts do not necessitate reversal in Washington. Thus, "[w]here the jury's verdict is supported by sufficient evidence from which it could rationally find the defendant guilty beyond a reasonable doubt, we will not reverse on grounds that the guilty verdict is inconsistent with an acquittal on another count." *State v. Wai-Chiu Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988) (adopting rule of *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932)). This rule recognizes that a variety of factors may affect a jury's verdict including mistake, compromise and lenity. *United States v. Powell*, 469 U.S. 57, 63, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). A court's independent review of the sufficiency of the evidence is adequate protection against jury irrationality or error. *See Powell*, 469 U.S. at 67-68.

■ Although the two verdicts here appear facially inconsistent, a comparison of the jury instructions refutes this apparent inconsistency. The instruction defining deadly

that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.190.

weapon for the robbery charge defined it as "any weapon, device, instrument, or article, which under the circumstances in which it is used, attempted to be used, or threatened to be used, *is readily capable of causing death or substantial bodily injury*." Clerk's Papers (CP) at 17 (emphasis added). *See also* RCW 9A.04.110(6). But the instruction defining deadly weapon for the sentencing enhancement defined it as "an implement or instrument that has the capacity to inflict death and, from the manner in which it is used, *is likely to produce or may easily produce death*." CP at 28 (emphasis added). *See also* RCW 9.94A.125.

As the jury could reasonably have concluded that, under the circumstances, the utility knife was "readily capable of causing . . . substantial bodily injury" but it was not "likely to produce" or would not "easily produce death," the verdicts are not irreconcilably inconsistent. *See, e.g., State v. Hauck*, 33 Wn. App. 75, 77-78, 651 P.2d 1092 (1982) (no inconsistency where jury found defendant guilty of first degree robbery for *displaying* what appeared to be a deadly weapon but found, by special interrogatory, that defendant was not *armed* with a deadly weapon); *State v. Roberts*, 25 Wn. App. 830, 838-40, 611 P.2d 1297 (1980) (no inconsistency where jury found defendant guilty of first degree rape based on his use of a deadly weapon but also found, by special verdict, that he was not armed with a deadly weapon; jury could have decided that knife was readily capable of causing death or serious bodily harm without finding that it had a blade longer than three inches). *But see State v. Wedner*, 24 Wn. App. 346, 347-48, 601 P.2d 950 (1979) (ambiguity in instructions and resulting inconsistency between general verdict and special interrogatory required reversal); *State v. Hurley*, 4 Wn. App. 781, 782-83, 483 P.2d 1274 (1971) (reversing conviction where jury found defendant guilty of robbery while armed with deadly weapon but found that he was not armed with such a weapon for purposes of special interrogatory; confusing jury

instructions on relevance of deadly weapon likely accounted for inconsistency).[2]

 Further, even inconsistent verdicts do not mandate reversal unless there is also insufficient evidence to support the guilty verdict. *Ng*, 110 Wn.2d at 48. We consider the sufficiency issue by viewing the evidence in the State's favor to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993). We do not review credibility determinations on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

 The evidence here supports Holmes's first degree robbery conviction. Holmes admitted to taking the groceries, he waved the utility knife in the assistant night manager's direction and told him to "come get me" or to "try and stop me," and the manager feared that Holmes would cut him if he tried to stop Holmes. 2 RP at 68, 109.

But Holmes asserts that the evidence was insufficient to establish that he armed himself with a deadly weapon that was readily capable of causing substantial bodily harm.[3] He argues that he held the knife in one hand while he "juggled" a basket full of meat in the other, that he was "hastily" leaving the store with the stolen meat, and that none of the store's employees approached or tried to stop him as he left the store.

There are two categories of deadly weapons: (1) those that are per se deadly, such as firearms; and (2) those that, under the circumstances in which they are used, are readily capable of causing death or substantial bodily harm. *State v. Taylor*, 97 Wn. App. 123, 126, 982 P.2d 687 (1999). We evaluate the second category by looking to the circum-

---

[2] While *Hurley* has similar facts to the case at bar, it and *Wedner* were decided when inconsistent verdicts constituted reversible error. *See, e.g., State v. O'Neil*, 24 Wn.2d 802, 809, 167 P.2d 471 (1946), *overruled by Ng*, 110 Wn.2d at 48.

[3] "Substantial bodily harm" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

stances in which the object is used, including " 'the intent and present ability of the user, the degree of force, the part of the body to which it was applied and the physical injuries inflicted.' " *State v. Shilling*, 77 Wn. App. 166, 171, 889 P.2d 948 (1995) (quoting *State v. Sorenson*, 6 Wn. App. 269, 273, 492 P.2d 233 (1972)). And, "[r]eady capability is determined in relation to surrounding circumstances, with reference to potential substantial bodily harm." *Shilling*, 77 Wn. App. at 171. *See also State v. Gotcher*, 52 Wn. App. 350, 354, 759 P.2d 1216 (1988) (must be "some manifestation of an intent to use a weapon" when object is not a deadly weapon per se).

Here, a witness testified to his experience with utility knives and the danger they present because they use regular razor blades. Further, Holmes held the knife with the blade extended and waved it at the manager who was standing a few feet away, thereby forcing the manager to step back. This supports the conclusion that the knife was a deadly weapon for purposes of establishing first degree robbery because it was readily capable of causing substantial bodily harm. *See, e.g., State v. Barragan*, 102 Wn. App. 754, 761, 9 P.3d 942 (2000) (pencil was deadly weapon where defendant forcefully swung pointed end at victim's eye and stated, " 'You're gonna die' "). This evidence also indicated that the knife was "easily accessible and readily available for use." *State v. Randle*, 47 Wn. App. 232, 235, 734 P.2d 51 (1987).

Thus, the jury's verdicts were not irreconcilably inconsistent and, even assuming an inconsistency, we need not reverse because sufficient evidence supports Holmes's first degree robbery conviction. *See Ng*, 110 Wn.2d at 48.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, A.C.J., and BRIDGEWATER, J., concur.