IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35114-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| POLICARPO CRUZ-NAVA, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Policarpo Cruz-Nava appeals his convictions and sentence for second degree assault, first degree assault with a deadly weapon enhancement, and felony harassment. We affirm Mr. Cruz-Nava's convictions, but a majority of the panel has voted to reverse the discretionary legal financial obligations (LFOs) imposed as part of Mr. Cruz-Nava's sentence.

## FACTS

Mr. Cruz-Nava was in a long-term intimate relationship with a woman named Maribel Analco-Gutierrez. On several occasions in the spring of 2016 Mr. Cruz-Nava invited his co-worker, Hugo Mateos-Rosas, to the home he shared with Ms. Analco-Gutierrez for dinner and drinking. On each occasion, Mr. Cruz-Nava encouraged Mr. Mateos-Rosas to engage Ms. Analco-Gutierrez sexually. His efforts were met with varied success.

Mr. Cruz-Nava's final effort to encourage sexual relations between Mr. Mateos-Rosas and Ms. Analco-Gutierrez occurred in early April 2016. That evening, after Mr. Cruz-Nava and Mr. Mateos-Rosas became heavily intoxicated, Mr. Cruz-Nava asked Mr. Mateos-Rosas and Ms. Analco-Gutierrez to disrobe. Both refused. Mr. Cruz-Nava then became angry. He grabbed Ms. Analco-Gutierrez by her neck and said he was going to kill her. At this point, Ms. Analco-Gutierrez became very scared. Mr. Mateos-Rosas eventually was able to pull Mr. Cruz-Nava away from Ms. Analco-Gutierrez. Mr. Cruz-Nava began to punch in Ms. Analco-Gutierrez's direction, with one hitting her and one hitting Mr. Mateos-Rosas.

Mr. Mateos-Rosas followed Mr. Cruz-Nava to the kitchen, where Mr. Cruz-Nava procured a small knife.[1] Mr. Mateos-Rosas urged Mr. Cruz-Nava to calm down and took hold of a closed folding chair to keep Mr. Cruz-Nava from getting too close. Mr. Cruz-Nava repeatedly came toward Mr. Mateos-Rosas with the knife. Mr. Cruz-Nava held the knife firmly in his hand and stated he was going to kill Mr. Mateos-Rosas and Ms. Analco-Gutierrez.

Eventually, Mr. Mateos-Rosas grasped Mr. Cruz-Nava's hand in order to loosen his grip on the knife. Mr. Cruz-Nava then threw the knife into the kitchen. Mr. Cruz-

---

[1] The knife measured 2 and 15/16 inches.

2

Nava yelled to call the police because he was going to kill Mr. Mateos-Rosas. Despite Mr. Cruz-Nava's threat, Mr. Mateos-Rosas was able to leave the residence.

Once Mr. Mateos-Rosas was gone, Mr. Cruz-Nava re-entered the bedroom and eventually fell asleep. Ms. Analco-Gutierrez subsequently left the house and reported the incident to the police.

At trial, the court permitted ER 404(b) testimony from Ms. Analco-Gutierrez regarding a prior domestic violence incident between herself and Mr. Cruz-Nava. The incident had taken place several years earlier in California. Although the State lacked evidence of a conviction, it did have a report indicating Mr. Cruz-Nava was arrested in California in May 2009 for corporal injury to a spouse or cohabitant.

At the close of trial, the jury found Mr. Cruz-Nava guilty of (1) second degree assault by strangulation or suffocation of Ms. Analco-Gutierrez, with a domestic violence enhancement, (2) felony harassment for the threat to kill Ms. Analco-Gutierrez, with a domestic violence enhancement, (3) felony harassment for the threat to kill Mr. Mateos-Rosas, and (4) first degree assault of Mr. Mateos-Rosas with a deadly weapon or by force or means likely to produce great bodily harm, with a deadly weapon enhancement.

At sentencing, the trial court imposed 156 months' imprisonment and a series of LFOs, payable in installments of $35 per month, commencing 60 days after Mr. Cruz-

No. 35114-9-III
*State v. Cruz-Nava*

Nava's release from custody.[2]  Mr. Cruz-Nava appeals.

ANALYSIS

*Sufficiency of the evidence*

Mr. Cruz-Nava argues the State failed to produce sufficient evidence of first

degree assault because the circumstances in which he wielded the knife did not indicate it

was a deadly weapon.  Evidence is sufficient to support a conviction if, viewed in the

light most favorable to the State, it permits any rational trier of fact to find the essential

elements of the crime beyond a reasonable doubt.  *State v. Kintz*, 169 Wn.2d 537, 551,

238 P.3d 470 (2010).  A claim of insufficiency admits the truth of the State's evidence

and all reasonable inferences drawn therefrom.  *Id*.  Circumstantial evidence and direct

evidence are equally reliable.  *Id*.

Mr. Cruz-Nava was convicted of violating RCW 9A.36.011(1)(a), which provides:

"A person is guilty of assault in the first degree if he or she, with intent to inflict great

bodily harm . . . [a]ssaults another with a firearm or any deadly weapon or by any force or

means likely to produce great bodily harm or death."  Objects other than firearms and

explosives constitute deadly weapons only if the State proves, under the circumstances of

---

[2] The judgment indicates the court imposed $1,250 in total LFOs.  However, the individual fees, costs, and assessments listed on the judgment amount to $1,365.

4

the case, the object was "readily capable of causing death or substantial bodily harm."

RCW 9A.04.110(6). "'Substantial bodily harm' means bodily injury which involves a

temporary but substantial disfigurement, or which causes a temporary but substantial loss

or impairment of the function of any bodily part or organ, or which causes a fracture of

any bodily part." RCW 9A.04.110(4)(b).

Here, the State produced sufficient evidence that the knife possessed by Mr. Cruz-

Nava constituted a deadly weapon, as required by statute. The State's evidence was not

simply that Mr. Cruz-Nava possessed a knife. *Cf. In re Pers. Restraint of Martinez*,

171 Wn.2d 354, 366, 256 P.3d 277 (2011) (The deadly weapon statute "requires more

than mere possession where the weapon in question is neither a firearm nor an

explosive."). Instead, Mr. Cruz-Nava gripped the knife in full view of Mr. Mateos-Rosas

while issuing death threats and moving toward Mr. Mateos-Rosas. Given the small size

of Mr. Cruz-Nava's home and the fact that Mr. Mateos-Rosas was able to grab Mr. Cruz-

Nava's hand in an effort to loosen his grip on the knife, it is apparent Mr. Cruz-Nava

wielded the knife in close enough proximity to Mr. Mateos-Rosas that it could have

caused significant injury. Although the folding chair used by Mr. Mateos-Rosas provided

some protection, it did not eliminate the potential for serious injury. *Cf. State v.*

*Skenandore*, 99 Wn. App. 494, 994 P.2d 291 (2000) (A handmade spear did not constitute

5

a deadly weapon given that a cell door protected the prison guard from potential injury.).

The totality of the State's evidence amply justified the jury's deadly weapon verdict.

*State v. Holmes*, 106 Wn. App. 775, 781-82, 24 P.3d 1118 (2001) (There was sufficient

evidence that knife constituted deadly weapon when the defendant "held the knife with

the blade extended and waved it at the [victim] who was standing a few feet away,

thereby forcing the [victim] to step back.").

*ER 404(b) violation—improperly admitted prior bad act evidence*

Mr. Cruz-Nava argues the trial court abused its discretion in admitting evidence of

the 2009 domestic violence incident from California under ER 404(b). We disagree.

Evidence of a defendant's prior bad acts is not admissible as character evidence or

to prove the defendant acted in conformity with a certain character trait. ER 404(b).

However, bad act evidence may be admissible if it is relevant for a noncharacter purpose

and is not overly prejudicial. *Id.* To admit prior bad act evidence under ER 404(b), the

trial court must (1) find by a preponderance of the evidence that the prior act occurred,

(2) identify "the purpose for which the evidence is sought to be introduced,"

(3) determine "whether the evidence is relevant to prove an element of the crime

charged," and (4) weigh "the probative value against the prejudicial effect." *State v.*

*Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

6

The record supports the trial court's admission of the State's ER 404(b) evidence under the four relevant factors:

FIRST: Reliable evidence supports that the prior act occurred. According to the State's pretrial offer of proof, Ms. Analco-Gutierrez was able to describe the prior assault and her account was at least partially corroborated by the existence of an arrest record. This was sufficient for the State to meet its factual burden. *State v. Kilgore*, 147 Wn.2d 288, 294-95, 53 P.3d 974 (2002).

SECOND: Evidence of the prior act was relevant to prove Ms. Analco-Gutierrez reasonably feared Mr. Cruz-Nava's threats. *State v. Barragan*, 102 Wn. App. 754, 759, 9 P.3d 942 (2000).

THIRD: The reasonableness of Ms. Analco-Gutierrez's fear bore on the elements of the charged crime of felony harassment. *Id.*; RCW 9A.46.020(1).

FOURTH: The prior act evidence was not overly prejudicial. The trial court permitted introduction of only one prior assault. This evidence was brief and was limited to Ms. Analco-Gutierrez's testimony.

Given all four of the elements to admissibility under ER 404(b) were met, the trial court did not abuse its discretion in permitting the State to introduce evidence of Mr. Cruz-Nava's prior assault.

7

No. 35114-9-III
*State v. Cruz-Nava*

*LFOs imposed without considering Mr. Cruz-Nava's ability to pay*

Mr. Cruz-Nava argues the trial court did not properly assess his financial capacity prior to imposing discretionary LFOs. Although no objection was made at the time of sentencing, we have discretion to review this issue under RAP 2.5(a). A majority of the panel elects to exercise this discretion. *See State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015).

At sentencing, the trial court imposed over $500 in discretionary LFOs.[3] While the trial court found Mr. Cruz-Nava had an ability to pay these LFOs, this was based solely on trial testimony indicating Mr. Cruz-Nava had been working prior to his arrest.[4] The trial court never questioned Mr. Cruz-Nava about his work history or financial circumstances. There was no evidence considered regarding Mr. Cruz-Nava's employment skills, the amount of his prior earnings, his financial resources, or his debts. Because the trial court did not conduct an individualized inquiry into Mr. Cruz-Nava's ability to pay court-ordered financial obligations, the imposition of discretionary LFOs is

---

[3] The mandatory LFOs included a $500 victim assessment, $200 criminal filing fee, and $100 DNA (deoxyribonucleic acid) fee. The remaining financial obligations were discretionary.

[4] Ms. Analco-Gutierrez and Mr. Mateos-Rosas testified that they had worked with Mr. Cruz-Nava.

8

reversed. *Blazina*, 182 Wn.2d at 838. This matter is remanded with instructions to either strike the discretionary LFOs or for resentencing.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds for review (SAG), Mr. Cruz-Nava argues: (1) he never touched the knife introduced at trial and it does not have his fingerprints on it, (2) Ms. Analco-Gutierrez intimidated a witness to not appear at trial, (3) the witnesses changed dates and times on several occasions during their trial testimony, (4) messages sent to Mr. Cruz-Nava on April 4, 2016, from Mr. Mateos-Rosas, which show he never felt threatened or afraid of Mr. Cruz-Nava, were not introduced at trial, (5) evidence was not introduced to show that the door, from inside the home, cannot be locked with a key, contradicting the testimony given that Mr. Cruz-Nava kept the keys to keep Ms. Analco-Gutierrez and Mr. Mateos-Rosas from leaving, (6) the prosecution gave immunity to a presumed sexual offender and drug dealer, Mr. Mateos-Rosas, and (7) the dispute from May 2009 in California was not with Ms. Analco-Gutierrez, rather, it was with her son and she got involved and injured in the arm.

The majority of Mr. Cruz-Nava's allegations relate to facts and materials outside the existing record. As such, review on direct appeal is inappropriate. Instead, the proper avenue for relief is a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322,

No. 35114-9-III
*State v. Cruz-Nava*

335, 899 P.2d 1251 (1995). To the extent the issues raised in Mr. Cruz-Nava's SAG can be assessed under the current record, they are too conclusory to inform the court of the nature and occurrence of the alleged errors. We therefore do not review Mr. Cruz-Nava's claims any further. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008); RAP 10.10(c).

## CONCLUSION

Mr. Cruz-Nava's convictions are affirmed. The trial court's imposition of discretionary LFOs is reversed. This matter is remanded with instructions for the trial court to either strike the discretionary LFOs or to conduct resentencing as to the imposition of discretionary LFOs. Because Mr. Cruz-Nava has partially prevailed on appeal, the State shall not be awarded appellate costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

WE CONCUR:

_____          _____
Korsmo, J.                                Fearing, J.

10