# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59425-1-II |
| Respondent, | |
| v. | |
| VINH QUANG LAM, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Vinh Quang Lam[1] shoplifted from a grocery store and pointed a knife at store employees who tried to stop him. The State charged Vinh with first degree robbery with a deadly weapon sentencing enhancement. At trial, the trial court admitted statements Vinh made to police even though the officer questioning him did not give him the full *Miranda*[2] warning. A jury convicted Vinh as charged. At sentencing, the trial court determined that Vinh's offender score was 9 points.

Vinh appeals his convictions and sentence. Vinh argues the trial court erred in admitting his incriminating statements. Vinh also contends that there was insufficient evidence that the knife was capable of causing death or substantial bodily harm as needed to prove first degree robbery and that the knife had capacity to inflict death as needed to prove the deadly weapon enhancement. Finally, Vinh claims that it was unconstitutional for the judge, rather than a jury, to determine which of his prior convictions counted toward his offender score at sentencing. He also contends

---

[1] In the Vietnamese language, the surname is listed first. Therefore, we will refer to the appellant as "Vinh" throughout our opinion.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

that a 2023 amendment to the Sentencing Reform Act of 1981, ch. 9.94A RCW should apply retroactively to exclude his juvenile convictions.

We affirm.

FACTS

I. Background

A.      Charged Events

In November 2022, Vinh entered a grocery store carrying a backpack. Vinh moved throughout the store with a shopping cart, concealed merchandise in the backpack, and proceeded to the exit, passing all points of sale without paying.

Loss prevention agents Emily Sackett, Adam Sandy, and Dustin Ramsey were stationed throughout the store, tasked with protecting merchandise and identifying potential shoplifters. The agents approached Vinh outside the store. They identified themselves, showed their loss prevention agent badges, and asked Vinh to return the merchandise. Sackett and Ramsey physically placed their hands on Vinh's cart. Vinh did not respond verbally; instead, he produced a knife and "point[ed] it in [the agents'] direction." VRP at 190. In response, the agents backed away, allowing Vinh to leave with the merchandise. The store employees then called 911.

Officer Anderson was the first to arrive on the scene, and he intercepted Vinh approximately five blocks from the store. Vinh complied with Anderson's instructions without issue.

B.      Miranda Warning

Sergeant O'Rourke arrived on the scene next. He approached Vinh and asked whether Vinh understood English. O'Rourke then advised Vinh of his *Miranda* rights, reciting them from memory rather than reading from a standard advisement-of-rights card, as follows:

2

> You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to an attorney – have one present before or during any questioning. You can decide at any time to exercise your rights, not answer any questions, or make any statements. Do you understand those rights? Having those rights in mind, are you willing to talk with us?

CrR 3.5 Hr'g Ex. P4 (Body Worn Camera (BWC) O'Rourke), at 1 min., 19 sec. to 1 min., 40 sec. O'Rourke did not inform Vinh that if he could not afford an attorney, one would be provided to him at no cost. After advising Vinh of most of his *Miranda* rights, O'Rourke asked whether Vinh was willing to speak with him, and Vinh nodded.

Sergeant Thiry then questioned Vinh. VRP at 22, 225. Vinh displayed no apparent confusion or impairment. While being questioned, Vinh initially denied stealing anything. However, when asked where the knife was, Vinh admitted to having thrown it away in a garbage can. Vinh also described the knife as a "cooking knife." CrR 3.5 Hr'g Ex. P2 (BWC Thiry), at 5 min., 44 sec. to 5 min., 54 sec. Thiry repeatedly asked whether the surveillance footage from the store would show Vinh "pull[ing] a knife" and Vinh ultimately admitted it "probably" would. *Id.* at 4 min., 27 sec. to 4 min., 36 sec. Vinh again denied stealing anything. The police found store merchandise in Vinh's backpack, but no knife. The knife was never recovered.

The State charged Vinh with robbery in the first degree with a deadly weapon sentencing enhancement. In closing arguments, the State referred to statements Vinh made to the officers only once during rebuttal.

## II. TRIAL

### A. CrR 3.5 Hearing

During motions in limine, the State moved to admit statements Vinh made to the police, including that he initially provided an inaccurate name and date of birth when police first

3

confronted him. During the pretrial CrR 3.5 hearing, Vinh's counsel questioned O'Rourke about the speed at which he delivered the *Miranda* warning and the fact that he recited it from memory. Defense counsel suggested that the fast pace, combined with Vinh's occasional signs of confusion during questioning, could indicate that Vinh did not fully understand what he was agreeing to when speaking to the officers. However, Vinh's counsel did not specifically raise the issue of O'Rourke's failure to inform Vinh that if he could not afford an attorney, one would be appointed at no cost.

The trial court found that Vinh was properly advised of his *Miranda* rights and that his waiver of those rights was knowing, voluntary, and intelligent.

Vinh's case proceeded to a jury trial. Sackett, Sandy, and Ramsey testified, and the jury viewed surveillance footage and still shots from inside and outside the store. Sergeant Thiry and Officer Anderson also testified, and the jury viewed short segments of the body-worn camera footage of their conversations with him.

B.    Testimony at Trial

During trial, all three loss prevention agents testified that they saw Vinh produce a knife. Sackett testified that Vinh pulled a "standard pocketknife" from his pocket, with a switch on it so that the blade "flipped up." Verbatim Rep. of Proc. (VRP) at 172. She could not recall the exact size of the blade, but described it as "metal" and "sharp." VRP at 173. Ramsey testified that Vinh produced the knife from his backpack and "pointed it" in Ramsey's direction. VRP at 194. He described it as a "hunting knife," but characterized it as "cheap" and "[n]othing major." VRP at 191. Nonetheless, he acknowledged it was a "real knife" made of metal, not plastic. VRP at 192. Ramsey estimated the blade to be approximately two and a half to three inches long. Sandy testified

that he saw the knife only briefly—for "maybe a second"—but long enough to confirm that it was a blade. VRP at 211.

The agents also testified about their reactions to the knife. Sackett stated that after Vinh produced the knife, they backed away for "[s]afety reasons," explaining that it was "not worth anyone getting hurt over." VRP at 174. Ramsey testified that he assumed, "if it looks like a weapon, it's a weapon," and that when Vinh "pointed" the knife, the agents backed away for their own safety. VRP at 192, 196. Ramsey further testified that Vinh pointed the knife in the agents' general direction and, although he did not jab the knife, Ramsey described the action as threatening.

C.      Jury Instructions and Verdict

The trial court instructed the jury on the definition of robbery generally:

> A person commits the crime of robbery when [they] unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another and the taking was against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person.

Clerk's Papers (CP) at 24. The trial court instructed the jury further that the threat of force may be either express or implied, the degree of force is immaterial so long as the force is used to obtain or retain possession of the property or to prevent or overcome resistance to the taking.

The jury was also specifically instructed that a first degree robbery occurs if, while committing or fleeing a robbery, the defendant is armed with or displays what appears to be a deadly weapon. The trial court instructed the jury that a "deadly weapon" means any weapon "which under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." CP at 31.

Additionally, the trial court instructed the jury on the deadly weapon special verdict, which required the State to prove that Vinh was armed with a deadly weapon at the time of the robbery. For the special verdict, the jury was told that a knife with a blade longer than three inches is per se a deadly weapon. Alternatively, if the blade was shorter than three inches, the jury could decide whether the blade constituted a deadly weapon based on evidence the weapon "has capacity to inflict death and, from the manner in which it is used, is likely to produce or may easily produce death." CP at 37.

The jury found Vinh guilty of first degree robbery and answered "yes" to the deadly weapon special verdict. CP at 48.

### III. SENTENCING

At sentencing, the parties disputed Vinh's offender score. Vinh had six juvenile felony convictions and six adult felony convictions. The State provided documentation of Vinh's release dates to establish that there had been no five-year period during which he remained in the community crime free; therefore, none of his prior offenses washed out. The trial court found that Vinh's offender score was 9, which meant his standard sentencing range for first degree robbery was 129-171 months.

The trial court imposed a sentence at the bottom of the standard range and added 48 months for the sentencing enhancement, totaling 177 months of confinement.[3]

Vinh appeals his convictions and his sentence.

---

[3]Because Vinh's 2007 felony conviction already included a prior firearm enhancement, any subsequent deadly weapon enhancements would be doubled, converting the standard 24-month enhancement to 48 months.

ANALYSIS

I. INCOMPLETE MIRANDA WARNING

Vinh argues that we must reverse his conviction because the trial court erred in admitting his incriminating statements due to an incomplete *Miranda* warning. Vinh did not challenge the improper advisement below during the CrR 3.5 hearing. Although we reach the issue, and we accept the State's concession that the trial court erred, we conclude the error was harmless.

A.     RAP 2.5

Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Frieday*, 33 Wn. App. 2d 719, 743, 565 P.3d 139 (2025). However, we will consider a manifest error affecting a constitutional right, even if it was not raised below. RAP 2.5(a)(3); *State v. Bertrand*, 165 Wn. App. 393, 400, 267 P.3d 511 (2011). Manifest error requires a showing of actual prejudice, meaning the error had "practical and identifiable consequences" in the trial. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).

Here, the State concedes that Sergeant O'Rourke's recitation of the *Miranda* advisement was incomplete, as he failed to inform Vinh that an attorney would be provided if he could not afford one. The State acknowledges the trial court therefore erred when it admitted Vinh's statements to police, and the error was constitutional because it implicated his right against self-incrimination. Finally, the State concedes that the error was manifest, noting that had Vinh's counsel objected, the trial court would likely have suppressed Vinh's incriminating and potentially prejudicial statements. Br. of Resp't at 19. We accept both concessions.[4]

---

[4] The State argues we should not reach this issue because Vinh did not argue the error was a manifest constitutional error in his opening brief, waiving the exception to the general rule that we do not consider new issues on appeal. RAP 2.5(a). Although Vinh did not explicitly invoke RAP

B.      Harmless Error

If an appellant successfully shows that the trial court erred, and the error is both constitutional in magnitude and manifest, the burden then shifts to the State to prove that the error was harmless beyond a reasonable doubt. *Bertrand*, 165 Wn. App. at 401. Where an error is constitutional in nature, we consider an error harmless only if the untainted evidence is so overwhelming that it necessarily leads to the same outcome. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 688, 327 P.3d 660 (2014).

Vinh argues that his improperly admitted post-*Miranda* statements about the knife and what the surveillance footage might show, along with his admission that he threw the knife away, were prejudicial. He contends that these remarks gave the impression he was attempting to cover up his actions and were "essential" to the State's case. Appellant's Opening Br. at 30.

The Washington Supreme Court has found that the erroneous admission of a statement made following an improper *Miranda* warning can be harmless when the untainted evidence of guilt is overwhelming. *State v. Mayer*, 184 Wn.2d 548, 556, 362 P.3d 745 (2015). In *Mayer*, the Court concluded that the trial court's admission of the defendant's confession to first degree robbery was harmless because untainted evidence—specifically accomplice testimony and DNA evidence—was so compelling that it necessarily led to the same result. 184 Wn.2d at 556.

---

2.5(a)(3) in his brief, he explains and references cases establishing the constitutional nature of the error stemming from the incomplete *Miranda* warning and its manifest nature. *See State v. Radcliffe*, 164 Wn.2d 900, 905, 194 P.3d 250 (2008); *State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014). Therefore, we address this issue, especially in light of the State's concessions.

      Vinh also contends that the argument he raised on appeal falls within the scope of the *issues* raised during the pretrial CrR 3.5 hearing, and that he should be permitted to refine his *arguments* on appeal. We need not resolve this point.

Similarly, here, untainted evidence from the testimony of the three loss prevention agents, each of whom witnessed firsthand that Vinh left the store without paying and produced the knife when confronted, as well as the surveillance footage showing him with the knife, overwhelmingly establish Vinh's guilt.

Further, unlike in *Mayer*, Vinh never fully admitted to committing a robbery. His statements about his role in the incident were inconsistent, so the jury had to rely on other evidence. The State referred to Vinh's improperly admitted statements only once in closing argument during rebuttal. Although this was a direct reference, these statements were minimally significant in light of the untainted evidence surrounding Vinh's possession and use of the knife. Thus, the untainted evidence—including the agents' testimony and the video evidence corroborating their accounts— was overwhelming, and the improper admission of Vinh's statements was harmless beyond a reasonable doubt.

## II. SUFFICIENCY OF THE EVIDENCE

Vinh argues that neither his first degree robbery conviction nor the special verdict was supported by sufficient evidence.

In a challenge to the sufficiency of the evidence, our review is "highly deferential to the jury's decision." *State v. Davis*, 182 Wn.2d 222, 227, 340 P.3d 820 (2014). We ask whether, taking the State's evidence as true and drawing all reasonable inferences in the State's favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Altman*, 23 Wn. App. 2d 705, 710, 520 P.3d 61 (2022). Circumstantial evidence and direct evidence are equally reliable under this standard. *State v. O'Neal*, 159 Wn.2d 500, 506, 150 P.3d 1121 (2007).

A.      Robbery in the First Degree

Vinh argues that there was insufficient evidence to prove that his knife qualified as a deadly weapon capable of causing death or substantial bodily harm, an essential element of first degree robbery. Vinh also argues there was at most a modicum of evidence about the danger the knife presented, and the threat was overstated because he never jabbed or thrusted the knife. We disagree.

A person is guilty of robbery in the first degree when, while committing or fleeing from a robbery, the defendant was armed with a deadly weapon. RCW 9A.56.200(1)(a)(i). "Deadly weapon" includes any weapon which, "under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

Where the deadly weapon in question is neither a firearm nor an explosive, more than mere possession is required. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 366, 256 P.3d 277 (2011). There must be some manifestation of willingness to use a knife before it can be found to be a deadly weapon. *Id.*

This court has held that there is no requirement for a knife to be jabbed or thrusted to qualify as a deadly weapon. In *State v. Holmes*, this court held that waving a utility knife towards a store manager, causing the manager to step back, was sufficient to support a first degree robbery charge. 106 Wn. App. 775, 782, 24 P.3d 1118 (2001). Similarly, in *State v. Ingham*, the defendant threatened the use of a knife to silence the victim and, even though the victim never saw the knife, this court held it could be considered a deadly weapon based on the circumstances. 26 Wn. App. 45, 51-52, 612 P.2d 801 (1980).

Vinh argues that none of the police officers could meaningfully testify about the knife's ability to cause death or bodily harm, because they never observed it. However, all three loss preventions agents who did see the knife testified regarding its characteristics, including its approximate size, material, and type. Sackett testified that Vinh drew a "standard pocketknife" that was "metal" and "sharp." VRP at 172-73. Ramsey described the knife as a "hunting knife" which, although "cheap," was a real knife made of metal, not plastic. VRP at 191. Ramsey estimated the blade to be approximately two and a half to three inches long. Sandy testified that although he only saw the knife very briefly, it was long enough to confirm it was a blade.

More significantly, Ramsey testified that Vinh pointed the knife at him, and all of the agents also testified about their reactions to the knife. All three either said they backed away or they felt threatened when Vinh produced the knife. Contrary to Vinh's assertion, the threat was not overstated. Vinh produced the knife in direct response to the agents' request that he return the merchandise. These circumstances reasonably support the inference that the knife was used to intimidate and deter the agents from interfering.

Viewed in the light most favorable to the State, the collective testimony, in combination with the surveillance footage, provide substantially more than a modicum of evidence. This evidence was sufficient for the jury to find that the knife was readily capable of causing death or substantial bodily harm.

B.    Deadly Weapon Enhancement

Vinh also argues that the State failed to provide sufficient evidence that the knife qualified as a deadly weapon for purposes of the special verdict because it was not capable of causing death by itself or in the manner it was used. We disagree.

11

The deadly weapon special verdict required the State to prove that the defendant was armed with a deadly weapon at the time of the robbery. For purposes of a deadly weapon enhancement, a knife is considered a deadly weapon per se if its blade is longer than three inches. RCW 9.94A.825. Alternatively, as is the case here, the State may prove a smaller knife is a deadly weapon by showing it "has capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825. Whether a knife with a blade less than three inches qualifies as a deadly weapon is a question of fact for the jury. *State v. Thompson*, 88 Wn.2d 546, 548-49, 564 P.2d 323 (1977). A knife need not be presented at trial nor must the victim sustain any injury for the knife to qualify as a deadly weapon; however, under the circumstances of its use, the defendant must have manifested a willingness to use the knife. *Id.*

Here, the State did not establish that the knife's blade was longer than three inches, instead the testimony estimated it to be approximately "two and a half to three inches." VRP at 192. However, for the same reasons we should conclude there was sufficient evidence to establish the knife was readily capable of causing death or substantial bodily harm, we should also conclude the State provided sufficient evidence to prove the knife had the capacity to inflict death and, considering the manner in which it was used, it was likely to cause death.

The agents testified that Vinh drew the knife in response to the agents' request that he return the merchandise. When Vinh produced the knife and pointed it toward the agents, a reasonable inference arose that he was threatening to stab the agents if they continued to interfere with his attempt to leave with the merchandise. The agents testified they felt threatened and disengaged for their own safety due to their close proximity to Vinh. Surveillance footage corroborated this testimony, showing the agents stepping backward and creating distance from

Vinh. Contrary to Vinh's assertion, there is no specific proximity requirement that must be established.

By using the knife to threaten the agents, Vinh manifested a willingness to use it. Moreover, the agents' testimony describing the knife as "sharp," "metal," and a "real knife" allowed the jury to infer it was readily capable of causing death. VRP at 173, 192. This testimony, combined with the surveillance footage, provides sufficient evidence to sustain the deadly weapon special verdict.

In sum, we affirm Vinh's convictions.

### III. *ERLINGER* ARGUMENT

Vinh next argues that we should remand for resentencing because his sentence violates the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 22 of the Washington Constitution. He relies on *Erlinger v. United States*, 602 U.S. 821, 144 S. Ct. 1840, 219 L. Ed. 2d 451 (2024), to argue that a jury should have determined which convictions counted towards his offender score. In response, the State points out that Vinh did not raise this argument below. We disagree that remand is required.

Generally, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *see also State v. Brinkley*, 192 Wn. App. 456, 462, 369 P.3d 157 (2016). There is, however, a narrow exception. *Erlinger*, 602 U.S. at 823. A sentencing court may consider "'the fact of a prior conviction'" so long as it determines only "'what crime, with what elements, the defendant was convicted of.'" *Id.* at 838 (quoting *Alleyne v. United States*, 570 U.S. 99, 111 n.1, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013); quoting *Mathis v. United States*, 579 U.S. 500, 512, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016)).

Additionally, Washington sentencing courts are permitted, as a matter of law, to determine not only the fact of a prior conviction, but also those facts "'intimately related'" to the prior conviction, using documents flowing from the prior conviction and sentence. *State v. Jones*, 159 Wn.2d 231, 241, 149 P.3d 636 (2006) (quoting *United States v. Moore*, 401 F.3d 1220, 1225 (10th Cir. 2005)).

In *Erlinger*, the United States Supreme Court expressly limited its holding to the "occasions inquiry" for determining firearm offenses under the federal Armed Career Criminals Act (ACCA). 602 U.S. at 822. Further, in *State v. Wheeler*, the Washington Supreme Court held that a judge may consider prior convictions during sentencing without violating a defendant's rights because they are not elements of the crime. 145 Wn.2d 116, 34 P.3d 799 (2001). In *State v. Anderson*, Division One considered and rejected an argument seeking to expand *Erlinger*. (*Erlinger* "is limited to resolving ACCA's occasions inquiry and does not overrule our state's well-established precedent."). 31 Wn. App. 2d 668, 681 552 P.3d 803 (2024).

In determining Vinh's offender score, the sentencing judge properly relied on certified documents establishing Vinh's prior convictions and incarceration history. These records showed that Vinh never went five years in the community without committing a criminal offense, meaning none of his prior felonies washed out, and his offender score was correctly calculated as 9.

Here, the sentencing judge was not deciding fact-intensive issues regarding the circumstances, timing, or occasions of Vinh's prior convictions; therefore, these determinations properly fall within the "fact of a prior conviction" exception. Even if they did not fall directly within the exception, they "[flow] from the prior conviction and sentence" and are "intimately

related," such that a judge, rather than a jury, has the authority to determine them under *Jones*, 159 Wn.2d at 233, 244, 241 (quoting *Moore*, 401 F.3d at 1225).

Even assuming without deciding that this issue is properly before us, we decline to depart from established pre-*Erlinger* precedent and recent cases recognizing the *Erlinger* holding is limited. Therefore, we conclude the trial judge had the authority to determine which convictions counted toward Vinh's offender score, and Vinh's sentence is constitutional.

## IV. ENGROSSED HOUSE BILL 1324

Vinh also argues that the 2023 amendment to the Sentencing Reform Act, which excludes juvenile adjudications from offender score calculations, should apply retroactively. He further contends that the recent line of cases declining to apply the 2023 amendment retroactively were wrongly decided based on legislative intent. We disagree.

The 2023 amendment to former RCW 9.94A.525 (2021) added a clause stating that "adjudications of guilt pursuant to Title 13 RCW [for juvenile adjudications] which are not murder in the first or second degree or class A felony sex offenses may not be included in the offender score." LAWS OF 2023, ch. 415, §2(1)(b).

Sentences imposed under the Sentencing Reform Act "shall be determined in accordance with the law in effect *when the current offense was committed*" unless otherwise provided. RCW 9.94A.345 (emphasis added). The saving clause statute provides that whenever a criminal law is changed or repealed, any offenses committed while it was still in effect will still be punished as if it were in force, unless a contrary intention is expressly declared in the amending act. RCW 10.01.040. The saving clause applies to "substantive changes in the law," which include changes

to "the punishment for offenses or the type of punishments possible." *State v. Jenks*, 197 Wn.2d 708, 721-22, 487 P.3d 482 (2021).

In a recent line of cases, this court has held that the amendment to the Sentencing Reform Act does not apply retroactively to offenses committed before the amendment's effective date. *See State v. Tester*, 30 Wn. App. 2d 650, 546 P.3d 94, *review denied*, 3 Wn.3d 1019 (2024); *State v. Troutman*, 30 Wn. App. 2d 592, 546 P.3d 458, *review denied*, 3 Wn.3d 1016 (2024).

Vinh acknowledges the recent line of cases. Vinh also acknowledges that there is a presumption that this amendment does not apply to him or others in his position. Contrary to Vinh's assertion, these cases were properly decided.[5]

The intent statement in Engrossed House Bill (EHB)1324 provides that the legislature intended to facilitate rehabilitation, reintegration, and due process, and to recognize the research on juvenile brains and the disproportionate impact of juvenile adjudications on adult sentences. LAWS OF 2023, ch. 415, §1. As the amendment affects offender scores, it is a substantive change in the law to which the saving clause applies. *Jenks*, 197 Wn.2d at 721.

Nothing in the bill mentions retroactive application or indicates that it should apply to cases pending on the effective date. Applying the 2023 amendment to Vinh's case would therefore violate RCW 9.94A.345 and RCW 10.01.040 by applying a sentencing law that was not in effect when he committed his offenses in November 2022. In sum, EHB 1324 does not apply to Vinh's sentencing and his offender score was properly calculated.

---

[5] Vinh also argues that if both his interpretation and the State's interpretation of the amendment are reasonable, the rule of lenity requires this court to adopt the interpretation most favorable to him. However, existing precedent clearly establishes that his interpretation is contrary to the legislature's express intent and is therefore unreasonable.

No. 59425-1-II

Accordingly, we affirm Vinh's sentence.

CONCLUSION

We affirm Vinh's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

VELJACIC, J.

17